UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SUNSET FINANCIAL RESOURCES,
INC.

              Plaintiff,

    v.

REDEVELOPMENT GROUP V, LLC et
<u>al</u>.,

           Defendants.

HON. JEROME B. SIMANDLE

Civil Action
Nos. 05-2914 and 05-2915

**<u>OPINION</u>**

APPEARANCES:

Alison L. Galer, Esq.
NORRIS, MCLAUGHLIN & MARCUS, P.C.
721 Route 202-206
P.O. Box 1018
Somervile, New Jersey 08876-1018
    <u>and</u>
Jaimee Katz Sussner, Esq.
HERRICK, FEINSTEIN LLP
2 Penn Plaza
11th Floor
Newark, New Jersey 07105
    Attorneys for Plaintiff

Thomas A. Cunniff, Esq.
Samuel H. Isreal, Esq.
James Griffith, Esq.
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3
Lawrenceville, NJ 08648-2311
    Attorneys for Defendants Redevelopment Group V, LLC and Dawn
    Staley

Stephen J. Defeo, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
      Attorney for Third-party Defendants Sunset Commercial Group,
      LLC, Sunset Mortgage Company, L.P. and Steven Forman

Gregory C. Dicarlo, Esq.
Cipriani & Werner, P.C.
10000 Lincoln Drive East
Suite 201
Marlton, New Jersey 08053-3015
      Attorney for Third-party Defendants Flynn Appraisal
      Associates, Inc. and Brian Flynn

**TABLE OF CONTENTS**

I.    **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . **5**

      A.    **Origins of the Alleged Scheme to Defraud Defendants** . **6**

      B.    **Representations Regarding the Status of the Coliseum**
            . . . . . . . . . . . . . . . . . . . . . . . **8**

      C.    **The Role of Flynn Appraisal Associates, Inc. and
            Brian Flynn** . . . . . . . . . . . . . . . . . **9**

      D.    **The Events of August 4, 2004 - The Purported Closing
            Date** . . . . . . . . . . . . . . . . . . . **10**

II.   **PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . **13**

III.  **PLAINTIFF'S MOTION AND DEFENDANTS' CROSS-MOTION FOR
      LEAVE TO AMEND** . . . . . . . . . . . . . . . . . . . **15**

      A.    **Legal Standard for Motions for Leave to Amend** . . . **15**

      B.    **Application to Plaintiff's Motion for Leave to Amend
            and Defendants' Cross-Motion to Amend** . . . . . . . **16**

            1.    **Plaintiff's Motion for Leave to Amend** . . . . **16**

            2.    **Defendants' Cross-Motion to Amend** . . . . . . **17**

IV.   **THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS** . . . . . . . **18**

2

A.   Legal Standard for a Motion to Dismiss  . . . . . .   20

B.   Defendants' Fraud-based Claims  . . . . . . . . . .   21

      1.   Pleading Standards Under Fed. R. Civ. P. 9(b)   22

      2.   Whether Defendants' Allegations of Fraud are
           Properly Pled  . . . . . . . . . . . . . . . .   24

      3.   Whether Defendants have Sufficiently Plead Fraud
           Allegations Made "Upon Information and Belief"   27

C.   Defendants' Negligence-based Claims . . . . . . . .   31

      1.   Arguments Made by Both the Sunset and Flynn
           Defendants . . . . . . . . . . . . . . . . . .   31

      2.   Additional Arguments Made by the Flynn Defendants
           . . . . . . . . . . . . . . . . . . . . . . .   32

      3.   The Court's Analysis . . . . . . . . . . . . .   34

D.   Defendants' Claim of Conversion . . . . . . . . . .   37

E.   Defendants' Claim of Breach of the Covenant of Good
     Faith and Fair Dealing  . . . . . . . . . . . . . .   38

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .   42

**SIMANDLE,** District Judge:

On the surface, the matter presently before the court appears quite straightforward:  A mortgage lender (Plaintiff, Sunset Financial Resources, Inc.) files suit to foreclose on a mortgaged property and sues the borrower (Defendant Dawn Staley and her investment vehicle, Redevelopment Group V, LLC) on the underlying note.  However, scratching the surface reveals that this matter is much more complex, involving claims by the

3

borrower of fraud, negligence, conversion, conspiracy, forgery and other acts of numerous individuals and entities (including a mortgage broker, an appraiser, a title company and a law firm, among others) who allegedly worked in concert to fraudulently induce Staley to purchase an outdated and dilapidated sports facility and sign a personal guaranty before eventually converting a portion of the funds she provided for use as a down payment on the facility.

Currently before the Court are the following four motions: (1) Plaintiff Sunset Financial Resources Inc.'s motion for leave to amend its original Complaint; (2) Defendants Redevelopment Group V, LLC and Dawn Staley's cross-motion to amend its Answer and Third-party Complaint; (3) Third-party defendant Flynn Appraisal Associates Inc.'s motion to dismiss Defendants' Third-party Complaint; and (4)Third-party defendants Sunset Mortgage Company, L.P. and Sunset Commercial Group, LLC's motion to dismiss Defendants' Third-party Complaint.  The Court has considered, in their entirety, the voluminous written submissions of all parties and heard oral argument on the four motions on February 15, 2006.

The simpler of the four motions are Plaintiff's motion for leave to amend and Defendants' cross-motion to amend which, because Plaintiff and Defendants have the right to amend their pleadings once as a matter of course under Fed. R. Civ. P. 15(a),

will be granted and Plaintiff will be permitted to file its
proposed first amended complaint (the "FAC") and Defendants will
be permitted to file its proposed first amended answer, cross-
claims and counterclaims (the "FAA").  The granting of
Plaintiff's motion and Defendants' cross-motion, however, does
not moot either third-party defendants Flynn Appraisal Associates
Inc.'s or Sunset Mortgage Company, LP/Sunset Commercial Group,
LLC's respective motions to dismiss.  Because the Court finds
unpersuasive the arguments made by third-party defendants in
their respective motions to dismiss - namely that Defendants have
failed to properly plead their fraud and negligence-related
claims and that, even if properly pled, these claims do not state
a cause of action upon which relief can be granted - the Court
will deny both third-party defendants' motions to dismiss.  The
Court will explain these findings herein.

I.   **BACKGROUND** [1]

     This case centers on an athletic facility known as "The
Coliseum" in Voorhees, New Jersey (the "Coliseum").  The property
is a 22-acre commercial sports facility, containing an ice rink,

---

     [1]  All the facts are taken from either Plaintiff's proposed
FAC or Defendants' proposed FAA and will be deemed true for the
purposes of the pending motions to dismiss.  See Lubrizol Corp.
v. Exxon Corp., 929 F.2d 960, 962 (3d Cir. 1991); Markowitz v.
Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); see also
Dana Transp., Inc. v. Ableco Finance, LLC, 2005 U.S. Dist. LEXIS
18086, *1 (D.N.J. August 17, 2005.)

gym, indoor and outdoor swimming pool, fitness center, banquet facility and office space.  (FAC ¶ 7.)

## A.  __Origins of the Alleged Scheme to Defraud Defendants__

According to Defendants,[2] an individual named Jay Phillips ("Phillips"), who at one time owned the Coliseum but lost it in a foreclosure action, devised a scheme to recover the property. (FAA ¶ 25-26.) In furtherance of his scheme, Phillips approached Dawn Staley[3] ("Staley") and requested that she help him re-acquire the Coliseum by providing $200,000 for a down payment. (Id. ¶ 27.)  According to Defendants, Phillips represented that he would obtain a mortgage from Sunset Commercial Group, LLC ("Sunset Commercial") and/or Sunset Mortgage Company, LP ("Sunset Mortgage")[4] for the remainder of the purchase price. (Id. ¶ 27,

---

[2]    Plaintiff filed companion lawsuits.  One suit is a foreclosure action (Docket No. 05-2914) and the other is an action to enforce a mortgage note (Docket No. 05-2915).  For convenience, Defendants Redevelopment Group V, LLC and Dawn Staley will be referred to collectively as "Defendants" despite the fact that, while Redevelopment and Staley are both defendants in the note action, only Redevelopment is a defendant in the foreclosure action.

[3]    Defendant Staley is the sole member of the Defendant, Redevelopment Group V, LLC. (FAA ¶ 1.) Staley is also a former professional basketball player and member of the United States Olympic Women's Basketball team. (Id. at ¶ 23.) When Staley was younger, Phillips served as one of Staley's mentors. (Id. at ¶ 24.)

[4]    Sunset Commercial, Sunset Mortgage, and Steven Forman (managing member of Sunset Commercial) collectively will be referred to as the "Sunset Defendants."  Moreover, although they share the word "Sunset" in their names, neither third-party defendants Sunset Commercial or Sunset Mortgage is related to

29.) It was agreed that the parties would form Redevelopment Group V, LLC, a Pennsylvania limited liability company - with Staley as the sole member - to serve as the legal entity by which the parties would acquire the Coliseum. (Id. ¶ 32.) Phillips allegedly told Staley that, because the Coliseum would be owned by Redevelopment Group V, LLC ("Redevelopment") and operated by Phillips through his limited liability company (Redevelopment Group V Property Management, LLC), Staley would not have any personal or financial responsibility for the project. (Id. ¶ 30.) Staley eventually contributed $130,000 to the down payment. (Id. ¶ 31.) Phillips told Staley that he would pay the $70,000 difference. (Id.)

According to Defendants, Phillips worked in concert with Steven Forman ("Forman") and Andrew Benish (an employee of Greentree Mortgage Company) to consummate the deal in which Redevelopment would purchase the Coliseum. (Id. ¶ 27 and 33.) As the closing approached, Defendants allege that Phillips and Forman induced Staley to sign a personal guaranty for what Phillips and Forman called a short-term "bridge mortgage." (Id. ¶ 67.) Specifically, Phillip and Forman told Staley that, under the bridge mortgage, she would sign a personal guaranty but the guaranty would only cover the 90-day bridge loan. (Id. ¶ 35.)

---

Plaintiff, Sunset Financial Resources, Inc. (See Sunset Defendants Motion to Dismiss Br. at 1, n. 1.)

Staley need only personally guaranty the short-term bridge loan, according to Phillip and Forman, because the two had arranged long-term financing from Greentree Mortgage Company that would replace (or "take out") the bridge loan she guaranteed. (<u>Id</u>. ¶ 35-37.)

      **B.**  **Representations Regarding the Status of the Coliseum**

In addition to alleged misrepresentations Phillips and Forman made to Staley regarding the financing aspect of the transaction, Phillips and Forman allegedly told Staley that the Coliseum was worth at least $9,000,000. (<u>Id</u>. ¶ 57.) Phillips and Forman allegedly told Staley that she was financially protected in the transaction because (1) she would be taking out a $4,700,000 mortgage on a property that was actually worth $9,000,000, and (2) the monthly income stream from the property's current lessees was greater than the monthly mortgage payments. (<u>Id</u>.) In order to justify the Coliseum's value and representations made to Staley regarding the rental income stream, Defendants allege that Phillips, Forman, and Benish created a number of fake leases. (<u>Id</u>. ¶ 38, 42-45.) One such "lease" involved the Philadelphia Phillies ("Phillies"). (<u>Id</u>. ¶ 38-39.) Defendants allege that Phillies' employee, Rob Holiday ("Holiday") was brought into the scheme in order to (i) create bogus letters (on Phillies' letterhead) stating that the Phillies

8

had committed to lease space at the Coliseum and (ii) personally represent the same to Staley. (Id. ¶ 38-41.)

Next, Phillips, Forman, and Benish allegedly prepared a fake loan application to Plaintiff that was in Staley's name (although Staley insists that she never saw the application and the contact information on the application listed Benish's email address rather than any of Staley's contact information.)  (Id. ¶ 48-49.) Incorporated into the loan application were a number of the bogus leases and a letter from Benish and Greentree Mortgage Company stating that Greentree would replace the loan with a long-term loan in the near future.  (Id. ¶ 50.)  Forman then sent Staley a letter of intent that stated that (i) Sunset Commercial and Sunset Financial would loan her $4,700,000 for the purchase of the Coliseum, (ii) that the loan was specifically to provide bridge financing, and (iii) that the "loan-to-value" ratio of the transaction will be no more than 65%. (Id. ¶ 52.)

### C.   The Role of Flynn Appraisal Associates, Inc. and Brian Flynn [5]

In connection with the transaction, Phillips, Forman, and Benish allegedly induced Plaintiff to engage Flynn Appraisal Associates, Inc. ("Flynn Appraisal") to perform an appraisal of the Coliseum.  (Id. ¶ 54-55.)  According to Defendants, Flynn

---

[5]  Flynn Appraisal Associates, Inc. and Brian Flynn (the individual appraiser) shall be referred to collectively as the "Flynn Defendants."

Appraisal valued the Coliseum at over $9,000,000 but failed to conduct such basic due diligence as investigating the validity of the faked and forged leases or obtaining estoppel certificates for the current tenants.[6]  (<u>Id</u>. ¶ 56, 59-60.)  Sunset Financial then engaged Boney & Johnson Appraisers ("Boney & Johnson") to provide an independent validation of Flynn Appraisal's appraisal. (<u>Id</u>. ¶ 63.)  Boney & Johnson expressed concerns about the validity of the earlier appraisal but, according to Defendants, Phillips, Forman, Benish, and representatives from Sunset Financial induced Boney & Johnson to sign off on the earlier appraisal by misrepresenting to them that the Phillies' lease had been executed.  (<u>Id</u>.)

**D.   <u>The Events of August 4, 2004 – The Purported Closing Date</u>**

On August 4, 2004, the loan transaction was purportedly consummated without either Staley or a representative from Redevelopment present.[7]  (<u>Id</u>. ¶ 66-67.)  According to Defendants, Phillips, Forman, and/or Benish forged Staley's signature on the

---

[6] An estoppel certificate is a signed statement by a party, such as a tenant, certifying for the benefit of another party that a certain statement of facts is correct – such as that a lease exists, that there are no defaults or that rent is paid on a certain dated.  <u>Blacks Law Dictionary</u> 551 (6th ed. 1990).  The delivery of the statement by the tenant prevents the tenant from later claiming a different state of facts.  <u>Id</u>.

[7] According to Defendants, in the summer of 2004, Staley was in New York with the United States Olympic Basketball Team, preparing to travel to Greece in September for the 2004 Olympics. (FAA ¶ 65.)

loan documents at the closing.  (Id. ¶ 67, FAC ¶ 27.)  Benish
then allegedly convinced two notaries public employed at Surety
Title Company that Staley's signature on the loan documents was
authentic, and that they should notarize the documents.  (FAA ¶
69, FAC ¶ 27-32.)  The notaries public notarized the documents,
according to Defendants, despite the fact that Staley neither
appeared before the notaries or acknowledged her signature on the
documents.  (FAA ¶ 69.)

There were a number of unusual characteristics about the
purported closing.  For example, although the contract of sale
listed the Coliseum's purchase price as $8,200,000, Sunset
Commercial or Plaintiff only made a loan in the amount of
$4,700,000.  (Id. ¶ 70-71; FAC ¶ 6.)  The true purchase price was
listed on the closing settlement sheet as $3,558,214.00 and the
amount of $4,641,786 of the purchase price was listed as paid as
a "gift of equity."[8]  (FAA ¶ 72.)  The remaining amount of the
loan paid for all real estate taxes in arrears, professional
fees, and closing costs (including $50,531.79 paid to
Redevelopment at closing).[9]  Thus, the actual "loan-to-value"

---

[8]  A "gift in equity" generally means a sale price below
market value, where the difference is a gift from the seller to
the buyer.  Such gifts are usually between family members.

[9]  Plaintiff claims that it was induced into making the loan
upon its belief that certain leases for the Property had been
executed and were in effect.  As such, the $8,200,000 purchase
price reflected the value of the property plus the income
generated from such leases.  s(FAC ¶ 39.)

ratio was 132% - far greater than the 65% or less as represented by the letter of intent sent by Forman.  (Id. ¶ 73-75.)  Second, the settlement sheet showed that of the $130,000 Staley provided to Phillips to serve as the down payment, only $50,000 was actually used for the down payment. (Id. ¶ 76.)  Third, the settlement sheet showed that $50,000 was paid to Redevelopment at closing but, according to Defendants, Phillips, Forman, and Benish, acting in concert, forged Staley's signature on the check to Redevelopment (FAA ¶ 76, 88-89) endorsing it over to a fictitious entity known as FBS, Inc.  Defendants allege that FBS, Inc. was an entity formed to divert closing proceeds to Phillips, Forman, and/or Benish. (Id. ¶ 89.)

No deed was provided and the transaction was not funded at the closing.  Instead, Staley's signature was allegedly forged on an affidavit of consideration and the affidavit was notarized by a third notary public from Surety Title.  (Id. ¶ 79-80.)  In addition, subsequent to the closing but before the transaction was funded, Henry Doner ("Doner") of the law firm Castro & Doner, P.C. delivered an opinion letter on behalf of Defendants containing a number of misstatements of material fact including a verification that the loan documents were legitimate and signatures on the documents were valid.  (Id. ¶ 85-86, FAC ¶ 34.)  Defendants allege that Doner was retained by Benish and delivered the opinion without ever talking with Staley.  (Id.)  Instead,

Defendants allege that Doner relied exclusively on Benish's representations regarding the loan documents.  (Id.)

Sometime after the closing (on either August 31, 2004 according to Plaintiff or October 29, 2004 according to Defendants), Sunset Commercial assigned all of its rights and interest in the mortgage note to Plaintiff.  (FAC ¶ 14, FAA ¶ 81.)  After the closing, Plaintiff claims that Defendants failed to make any payments under the loan and Defendants ultimately defaulted.  (FAC ¶ 18-19.)[10]  As a result, Plaintiff accelerated all amounts owed under the note and demanded payment from Defendants.  (FAC ¶ 18-19.)

## II.  PROCEDURAL HISTORY

Plaintiff filed companion actions in this case on April 8, 2005 in the Superior Court of New Jersey: (1) a complaint in foreclosure against Redevelopment alleging that Redevelopment had defaulted on its loan obligations surrounding its purchase of the Coliseum (the "Foreclosure Action"); and (2) an action against both Redevelopment and Staley (as guarantor of the note) demanding payment of the overdue principle, interest, and late

---

[10]  At some point, it became clear to Plaintiff that the Coliseum was generating essentially no rental income and a number of the tenants filed lawsuits against Sunset Financial.  As a result, with the approval of the state court, Plaintiff appointed a receiver for the property.  According to Plaintiff's receiver, the property was desperately in need of significant and expensive repairs.  In response to the rapid deterioration of the property, on December 2, 2005, this Court issued a consent order authorizing the sale of the property pendente lite.

13

fees under the loan (the "Note Action").  On June 6, 2005, both
state court actions were removed to this Court.[11]

On July 17, 2005, Defendants filed an Answer in the Note
Action making a number of counterclaims and third-party claims
against various third-party defendants.  Third-party defendants
Sunset Mortgage/Sunset Commercial and Flynn Appraisals filed
motions to dismiss Defendants' third-party complaint on August 25
and September 8, 2005, respectively.

In response to the deadlines set in a December 21, 2005
scheduling order entered by U.S. Magistrate Judge Ann Marie
Donio, on January 10, 2006 Plaintiff filed a motion to
amend/correct Plaintiff's Complaint in order to add new parties
and new claims (contained in Plaintiff's proposed First Amended
Complaint ("FAC").[12]  On January 20, 2006, Defendants filed a
cross-motion to amend its answer, cross-claims and counterclaims
(contained in Defendants' First Amended Answer, Cross-claims, and
Counterclaims ("FAA")).  Both the Sunset Defendants and Flynn
Defendants filed opposition to Plaintiff's motion for leave to
amend on January 19 and January 27, 2006, respectively.  In

---

[11]   The Foreclosure Action is Docket No. 05-2914 and the
Note Action is 05-2915.

[12]   Complicating the procedural history in this matter is
the fact that Sunset Financial previously filed a motion for
leave to amend on August 17, 2005.  Sunset Financial withdrew the
motion on February 2, 2006 after filing a new motion for leave to
amend.

addition, the Sunset Defendants and Flynn Defendants filed
opposition to Defendants' cross-motion to amend on February 3 and
January 27, 2006 respectively.  Plaintiff and Defendants each
timely replied on February 10, 2006.  The Court heard oral
argument on February 15, 2006 and reserved decision on all four
pending motions.

## III. PLAINTIFF'S MOTION AND DEFENDANTS' CROSS-MOTION FOR LEAVE TO AMEND

Plaintiff has moved for leave to amend/correct its Complaint
and Defendants cross-moved to amend its answer, cross-claims and
counterclaims.

### A.    Legal Standard for Motions for Leave to Amend

Under Fed. R. Civ. P. 15(a), a party may amend "the party's
pleading once as a matter of course at any time before a
responsive pleading is served."  Fed. R. Civ. P. 15(a).  If a
responsive pleading has been served, "a party may amend the
party's pleading only by leave of court or by written consent of
the adverse party."  Id.  Leave to file an amended complaint
"shall be freely given when justice so requires."  Id.; see Foman
v. Davis, 371 U.S. 178 (1962)(a motion for leave to amend under
Rule 15(a) should be freely granted); Adams v. Gould, Inc., 739
F.2d 858, 864 (3d Cir. 1984), cert. denied, 469 U.S. 1122
(1985).[13]

---

[13]  Although liberally granted, the decision to grant leave
to amend a complaint rests within the sound discretion of the

**B.**   **Application to Plaintiff's Motion for Leave to Amend and Defendants' Cross-Motion to Amend**

      **1.**   **Plaintiff's Motion for Leave to Amend**

This Court will grant Plaintiff's motion to amend its Complaint (in favor of its proposed FAC) because Plaintiff can amend its Complaint as a matter of right under Fed. R. Civ. P. 15(a). Here, Defendants are the only party that served Plaintiff with a responsive pleading as Defendants answered Plaintiff's Complaint on July 6, 2005 (Docket Item No. 4 in the Foreclosure Action and Docket Item No. 5 in the Note Action.) Because Defendants filed a responsive pleading, Plaintiff would normally be required to seek leave of court to amend, but in this case, Defendants consented (in writing) to Plaintiff's amendment. See Fed. R. Civ. P. 15(a); (Def.'s Br. at 12.) With respect to third-party defendants, the Flynn Defendants, and the Sunset Defendants, this Court finds that, because they have not yet filed responsive pleadings to Plaintiff's Complaint, Plaintiff can amend the Complaint as to these third-party defendants as a matter of right. Indeed, this Court notes that the Flynn

---

trial court under Fed. R. Civ. P. 15(a), see Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983), but a liberal amendment philosophy under the Federal Rules of Civil Procedure limits the district court's discretion to deny leave to amend. See Adams, 739 F.2d at 864. Thus, the district court may only deny leave to amend (a) if the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) if the amendment would be futile (i.e., the amendment fails to state a cause of action). See id.; see also Massarsky, 706 F.2d at 125.

Defendants and Sunset Defendants were not named as defendants by
Plaintiff in its original Complaint.  Thus, Plaintiff will be
permitted to file its proposed FAC.

### 2.   Defendants' Cross-Motion to Amend

This Court will also grant Defendants' cross-motion to amend
its answer, cross-claims and counter-claims.  Just as Defendants
were the only party that filed a responsive pleading to
Plaintiff's Complaint, here, Plaintiff is the only party that
filed a responsive pleading to Defendants' cross-claims and
counterclaims as Plaintiff answered Defendants' counterclaims on
August 10, 2005 (Docket Item No. 9 in the Foreclosure Action and
Docket Item No. 10 in the Note Action).  Similar to Defendants,
Plaintiff has also consented to Defendants amending its pleading.
Thus, Defendants have the right to amend their answer, cross-
claims, and counterclaims as a matter of course under Fed. R.
Civ. P. 15(a) and, as to counterclaims against Plaintiff, will be
permitted to file its proposed FAA.

In contrast to the position taken by the Flynn Defendants -
namely that their filing of a motion to dismiss was "tantamount
to a responsive pleading" - a motion to dismiss is not a
responsive pleading under Rule 15(a).  See Shane v. Fauver, 213
F.3d 113, 115 (3d Cir. 2000); Centifanti v. Nix, 865 F.2d 1422,
1431 n.9 (3d Cir. 1989)("[N]either a motion to dismiss, nor a
motion for summary judgment, constitutes a responsive pleading

17

under Fed. R. Civ. P. 15(a).”); <u>Kelly v. Delaware River Joint
Comm’n</u>, 187 F.2d 93, 94 (3d Cir. 1951).  Because the Flynn
Defendants and the Sunset Defendants only filed motions to
dismiss and not responsive pleadings, Defendants may amend their
cross-claims against both Flynn Defendants and Sunset Defendants
as a matter of course.  Defendants may take such action by filing
its proposed FAA.[14]

## IV.  THIRD-PARTY DEFENDANTS’ MOTIONS TO DISMISS

Defendants answered Plaintiff’s original Complaint on August
10, 2005.  The answer contained a Third-party Complaint bringing
cross-claims of fraud (including claims under the New Jersey
Racketeer Influenced and Corrupt Organization Act (“NJRICO”) and
New Jersey Consumer Fraud Act (“NJCFA”)), fraud in the
inducement, negligence/malpractice, negligent misrepresentation,
conspiracy, aiding and abetting, conversion and breach of
covenant against both the Flynn Defendants and/or Sunset
Defendants.  Both the Sunset Defendants and Flynn Defendants
moved to dismiss the Third-party Complaint on August 25, 2005 and

---

[14]   The Court need not address arguments made by the Flynn
Defendants and Sunset Defendants that leave to amend should be
denied because allowing either Plaintiff’s motion to amend or
Defendants’ cross-motion to amend would be futile.  As another
court in this District recently held, absent the filing of a
responsive pleading, Rule 15(a) “permits amendment as of right,
<u>without regard to potential prejudice, delay or futility of
amendment</u>.”  <u>Tomlinson v. Virtua-West Jersey Health Sys.</u>, 2005 WL
1529411, *7 (D.N.J., June 28, 2005)(emphasis added) <u>citing
Centifanti</u>, 865 F.2d at 1431.

September 8, 2005 respectively.  While these motions were
pending, Defendants filed a cross-motion for leave to amend its
answer, cross-claims and counterclaims on January 20, 2006.

In their motions to dismiss, the third-party defendants
raise three arguments.  First, they argue that Defendants have
not pled their fraud-related claims (including claims under the
NJRICO and NJCFA) with particularity as required by Fed. R. Civ.
P. 9(b).  Second, the third-party defendants argue that
Defendants' negligence-related claims are improperly plead and
fail to satisfy even the more liberal pleading requirements set
out in Rule 8(a).  Finally, third-party defendants argue that
Defendants' claims of conversion and breach of contract must be
dismissed under Fed. R. Civ. P. 12(b)(6) because they fail to
state a claim upon which relief can be granted.  In light of the
fact that this Court must accept all of the allegations made in
Defendants' Third-party Complaint as true, this Court finds these
arguments unpersuasive and will allow all claims made by
Defendants against third-party defendants to proceed.[15]

_____

[15]  Before addressing the merits of the third-party
defendants' motions to dismiss, the Court must address a
preliminary matter.  In their brief in support of their cross-
motion to amend, Defendants argue that amendment of the third-
party complaint moots the early motions to dismiss filed by both
the Sunset Defendants and the Flynn Defendants.  See Snyder v.
Pascack, 303 F.3d 271, 276 (3d Cir. 2002)("an amended pleading
supercedes all prior pleadings and the prior pleadings have no
further role in the case."); see also Jordan v. City of
Philadelphia, 66 F. Supp. 2d 638, 641, n. 1 (E.D. Pa. 1999)(a
motion directed at a prior pleading should be considered directed

**A.  Legal Standard for a Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied "unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court
must accept any and all reasonable inferences derived from those

---

at the new pleading only where the defects in the original
pleading remain in the new pleading.)

"Once an amended pleading is interposed, the original
pleading no longer performs any function in the case and any
subsequent motion made by an opposing party should be directed at
the amended pleading."  6 Wright, Miller & Kane, Federal Practice
and Procedure § 1476 (2005).  However, a defendant "should not be
required to file a new motion to dismiss simply because an
amended pleading was introduced while their motion was pending."
Id.  Rather, "[i]f some of the defects raised in the original
motion remain in the new pleading, the court simply may consider
the motion as being addressed to the amended pleading."  Id.
citing Jordan, 66 F. Supp.2d at 641, n. 1.; Sun Co. v. Badger
Design & Constructors, Inc., 939 F. Supp. 365, 367 n. 3 (E.D. Pa.
1996).

This Court finds that, while Defendants' original third-
party complaint will play no further role in this litigation,
Defendants' cross-motion to amend does not moot the Sunset
Defendants and Flynn Defendants' prior motions to dismiss.
Instead, following the holding in Johnson and Sun Co., the Court
will address arguments made in the Sunset Defendants and Flynn
Defendants' motions to dismiss as if they were directed at the
Defendants' FAA to the extent applicable.  Further, as directed
by the Court at oral argument, the Sunset Defendants and the
Flynn Defendants will have the opportunity to file motions to
dismiss any new claim raised in Plaintiffs' FAC and Defendants'
FAA. However, in their subsequent motions to dismiss, the Sunset
Defendants and Flynn Defendants are precluded from raising any
argument addressed in this Opinion.

facts.  See Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  Finally, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim.  Markowitz, 906 F.2d at 103.

       **B.    Defendants' Fraud-based Claims**

       In its proposed FAA, Defendants assert, among others, claims of fraud, conspiracy, aiding and abetting, and violations of NJCFA and NJRICO.  (See FAA Counts 1-3, 8 and 9.)  In their motion to dismiss, the Sunset Defendants first argue that, Defendants have failed to plead the averments of fraud with sufficient particularity.  The crux of their contention is that, in Defendants' original Third-party Complaint (and now proposed FAA), Defendants have failed to specify when or where alleged misrepresentations and fraudulent acts occurred or to identify which of the third-party defendants either made misrepresentation or engaged in the specific fraudulent conduct.  (Id. at 8-9.)

21

The Sunset Commercial Defendants point to numerous examples where the proposed FAA refers to multiple third-party defendants collectively.[16]  (Id. 9.)  Moreover, according to the Sunset Defendants, all of Defendants' pleadings that were made upon Defendants' "information and belief" fail to meet the particularity requirement of Fed. R. Civ. P. 9(b).  (Id.).  (Id. at 8.)  Finally, according to the Sunset Defendants, claims made under NJCFA and NJRICO must also be pled with sufficient particularity under Rule 9(b) to survive a motion to dismiss.

### 1.  Pleading Standards Under Fed. R. Civ. P. 9(b)

When pleading an allegation of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff is not required to "plead the 'date, place or time' of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into their allegations."  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (quoting Seville Indus. Machinery v.

---

[16]  The Sunset Defendants provide these examples in its brief in opposition to Defedants cross-motion to amend.  Such examples included allegations made in Defendants' proposed FAA in which Defendants state that Phillips and Forman advised Staley that she might have to provide a guaranty for the bridge loan but that the guaranty would be terminated when the permanent financing was in place; that Phillip, Benish, Forman and Holiday prepared bogus lease transactions with the Phillies; and that Phillips, working in concert with Forman and Benish, told Staley that the appraised value of the Coliseum was in excess of $9,000,000.

Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984)).  In order
to meet this standard, the subject and nature of each
misrepresentation must be adequately pled.  See Seville Indus.
Machinery, 742 F.2d at 791.[17]

When the alleged fraud involves both numerous defendants and
misrepresentations of fact, Rule 9(b) is satisfied if "at a
minimum...the plaintiff identif[ies] the speaker of the allegedly
fraudulent statements."  Klein v. General Nutrition Cos., Inc.,
186 F.3d 338, 345 (3d Cir. 1999); Naporano Iron & Metal Co. v.
American Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 2000)("A
plaintiff must plead fraud with particularity with respect to
each defendant, thereby informing each defendant of the nature of
its alleged participation in the fraud.").

A court must apply the heightened pleading standards of Rule
9(b) in accordance with the rule's underlying purpose - namely
that the defendant (a) be put on notice of the precise misconduct
surrounding the allegation of fraud asserted against him and (b)
guarded against "spurious charges of immoral or fraudulent

_____

[17]   In Seville, the Third Circuit held that plaintiffs
satisfied Rule 9(b) by incorporating into plaintiff's complaint a
specific list of machine parts involved in the fraud, as well as
described the transactions that involved these parts.  See id.
The court concluded that the heightened pleading requirement was
met because the complaint "sets forth [i] the nature of the
alleged misrepresentations, and [ii] while it does not describe
the precise word used, each allegation of fraud adequately
describes the nature and subject of the alleged
misrepresentation." Id.

behavior."  <u>See</u> <u>Seville Indus. Machinery</u>, 742 F.2d at 791; <u>see</u> <u>also</u> <u>Lum v. Bank of America</u>, 361 F.3d 217 (3d Cir. 2004); <u>New</u> <u>Jersey Sports Prod., Inc. v. Don King Prod., Inc.</u>, 1997 U.S. Dist. LEXIS 23209 at *42 (D.N.J. October 28, 1997)(district court held that "[t]he <u>central</u> <u>inquiry</u>...is whether the complaint is sufficiently precise to place the defendant on notice....")(emphasis added).

### 2.  Whether Defendants' Allegations of Fraud are Properly Pled

The Sunset Defendants argue that Defendants have not pled their claims of fraud with particularity as they have not pled "the who, what, when, where and how" of the fraudulent acts and misrepresentations of fact alleged against the Sunset Defendants. (Sunset Defendants' Br. in Support of Mot. to Dismiss at 6 <u>citing</u> <u>MCI Worldcom Network Servs., Inc. v. Graphnet, Inc.</u>, 2005 WL 1116163, at *14 (D.N.J., May 11, 2005)).  However, Defendants do not need to plead the "date, place or time" of each alleged misrepresentation or each alleged fraudulent act performed to satisfy the requirements under Rule 9(b).  Indeed, "focusing exclusively on Rule 9(b)'s 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated' by the Federal Rules of Civil Procedure." <u>Christidis v. First Penn. Mtg. Trust</u>, 717 F.2d 96, 100 (3d Cir. 1984)(<u>quoting</u> 5 C. Wright & A. Miller, <u>Federal</u> <u>Practice and Procedure</u> § 1298, at 407 (1969)).  Rather, Rule 9(b)

24

merely requires that "circumstances" of the alleged fraud be pled
with enough specificity to "place defendants on notice of the
precise misconduct with which they are charged." Seville Indus.
Mach. Corp., 742 F.2d at 791.  While allegations of "date, place
and time" fulfill these requirements, Rule 9(b) does not require
them.  See id.  Rather, a plaintiffs can satisfy Rule 9(b) by
"us[ing] alternative means of injecting precision and some
measure of substantiation into their allegations of fraud."  Id.

     In their proposed FAA, Defendants provide the required
precision and measure of substantiation into their allegations of
fraud.  In their moving papers and at oral argument, Defendants
have provided the Court with numerous examples of specific
allegations of fraud with regard to the Sunset Defendants.  For
example:

- In a letter of intent dated July 13, 2004, Forman (on
  behalf of Sunset Financial and Sunset Commercial) sent
  a letter of intent to Defendants that contained
  misrepresentations of the loan-to-value ratio, the fact
  that the financing was only a bridge loan and that the
  loan would be an interest only loan (FAA ¶ 52);

- In the Spring of 2004, Forman misrepresented to
  Defendants that Forman had arranged financing to "take-
  out" Defendants' bridge loan and that such financing
  was a "done deal" (Id. ¶ 34, 36);

- Phillips and Forman advised Defendants that Staley's
  personal guaranty would be terminated within 30 to 90
  days when the permanent financing was in place (Id. ¶
  35);

- Phillips, Benish, and Forman fabricated non-existent
  leases (including a faked lease with New York Life

Insurance Company) for space in the Coliseum (<u>Id</u>. ¶ 42-43, 46.); and

• Phillips, Forman, and Benish provided bogus lease information to Flynn Appraisals. (<u>Id</u>. ¶ 55.)[18]

Moreover, the Court holds that while some, but not all, of the fraud allegations reference multiple defendants, this does not mean that Staley and Redevelopment have not sufficiently pled fraud, as it is certainly possible that multiple defendants could make the same misrepresentation.[19]

Finally, the Court addresses arguments by the Sunset Defendants that Defendants claim under NJRICO must also be dismissed because Defendants are required to satisfy the same heightened pleading requirements of Fed R. Civ. P. 9(b) when pleading their NJRICO claim. Defendants first note that there is no dispute that Defendants properly pled the elements of a New Jersey Civil RICO claim under N.J.S.A. 2C:41-4. (Proposed FAA ¶¶ 111-18.) Instead, the dispute centers on (i) whether Defendants'

---

[18] This Court agrees with Defendants argument that, where specific allegations involve Forman, Sunset Commercial and Sunset Mortgage may be liable for his torts under New Jersey's respondeat superior laws if he was acting in his official capacity when doing acts contained in the allegations. <u>See</u> <u>Hill v. New Jersey Dep't of Corrections Comm'n Fauver</u>, 342 N.J. Super 273, 305 (App. Div. 2001).

[19] In <u>Shulton, Inc. v. Optel Corp.</u>, this District held that, "[t]he fact that plaintiff has not differentiated among defendants in some instances does not warrant dismissal of the pleading where plaintiff alleges that all of the defendants...acted to facilitate a general scheme." 1986 WL 15617, *16 (D.N.J. September 29, 1986).

NJRICO claim must satisfy the heightened pleading requirement of Rule 9(b) and, if such a requirement exists, (ii) whether Defendants have satisfied such a burden.

Defendants argue that, unlike the federal RICO statute, the NJRICO does not require a plaintiff to plead its claim with the particularity required by Rule 9(b).  However, having already held that Defendants' fraud-related claims have satisfied the heightened pleading requirements of Rule 9(b), the Court need not address whether a claim under NJRICO must satisfy the heightened pleading requirements.  Even if NJRICO claims are subject to this heightened standard, as discussed, _supra_, Defendants have met the standard (e.g., by specifically alleging acts of fraud, alleging that Forman forged Staley's signature on loan closing documents and a check payable to Redevelopment, alleging that Forman played a role in obtaining an inflated appraisal, and specifically alleging that Forman played a role in converting Defendants funds at the purported closing).  (FAA ¶ 67, 89 and 114.)

### 3.    Whether Defendants have Sufficiently Plead Fraud Allegations Made "Upon Information and Belief"

At oral argument, counsel for the Sunset Defendants argued that Defendants' fraud claims made "upon information and belief" do not satisfy the heightened pleading requirement of Rule 9(b).[20]  In support of this argument, the Sunset Defendants cite

---

[20]  As a preliminary matter, the Court notes that Defendants' proposed FAA is not replete with fraud allegations

two cases, the Seventh Circuit Court of Appeals' decision in

<u>Bankers Trust Co., v. Old Republic Ins. Co.</u> and this District's

decision in <u>Shulton Inc. v. Optel Corporation</u>.[21]

    The Court disagrees with the legal conclusions of the Sunset

Defendants.  Although neither case cited by the Sunset Defendants

is binding on this Court, both are factually distinguishable from

---

made solely upon Defendants' information and belief. In fact,
aside from allegations regarding the status and domicile of
certain third-party defendants, the Court finds only six
instances (in a 166 paragraph third-party complaint) in which
Defendants have plead fraud allegations "upon information and
belief." (<u>See</u> FAA ¶¶ 44, 49, 80, 89, 159 and 163.) Two of the
averments involve whether certain leases for space at the
Coliseum were fake. (<u>See</u> FAA ¶¶ 44, 49.) A third did not involve
the Sunset Defendants at all, and instead involved allegations
that Phillips and/or Benish convinced a notary public from Surety
Title Company to notarize an affidavit of consideration. (FAA ¶
80.) Another averment involves the existence and purpose for FBS,
Inc., an entity that was allegedly used by the third-party
defendants to convert funds dispersed at the closing. (FAA ¶ 89.)
The remaining two averments involve allegations that the third-
party defendants entered into an agreement (<u>see</u> FAA ¶ 159) or
pursued a common design (<u>see</u> FAA ¶ 163) to defraud Defendants.


[21]   In <u>Bankers Trust Co., v. Old Republic Ins. Co.</u>, the
Seventh Circuit held that a plaintiff's "duty to plead the
circumstances constituting fraud with particularity could not be
fulfilled by pleading those circumstances on 'information and
belief' unless they were facts inaccessible to the plaintiff...."
959 F.2d 677, 683 (7th Cir. 1992); <u>but</u> <u>see</u> <u>Shapiro v. UJB Fin.
Corp.</u>, 964 F.2d 272 (3d Cir. 1992) (citing 2A James W. Moore & Jo
D. Lucas, <u>Moore's Federal Practice</u> ¶ 9.03 (1991)("where the facts
are in the exclusive possession of the adversary, courts should
permit the pleader to allege the facts on information and
belief...."). In <u>Shulton Inc. v. Optel Corp.</u>, a court in this
District held that "the court cannot accept such serious
allegations of fraud based solely on the 'information and belief'
of the plaintiff alone <u>without</u> <u>any</u> <u>elaboration</u> <u>as</u> <u>to</u> <u>the</u> <u>basis</u> <u>of</u>
<u>that</u> <u>belief</u>." 186 WL 15617 at *16 (D.N.J. 1986)(emphasis added)
(<u>citing</u> 2 <u>Moore's Federal Practice</u>, ¶ 9.03.).

the present case.  In holding that the court could not accept
fraud allegations made "upon information and belief," the Shulton
court highlighted that plaintiff did not include "any elaboration
as to the basis of [their] belief."  Shulton, 1986 WL 15617 at
*16.  Unlike the plaintiff in Shulton and Bankers Trust Co.,
their proposed FAA, Defendants have fully elaborated on the basis
of their belief regarding the existence of phony leases (see FAA
44, 49), Forman's role in converting the closing proceeds through
FBS, Inc. (FAA ¶ 89) and the third-party defendants agreement and
common design intended to defraud Defendants.[22]  (FAA ¶ 159,
163.)

    Moreover, the Court's obligations to read the Federal Rules
of Civil Procedure together as a cohesive unit, suggests to this
Court that a blanket prohibition on pleading fraud claims "upon
information and belief" is inappropriate.  The heightened
pleading requirement under Rule 9(b) is intended to "safeguard
defendants against spurious charges of immoral and fraudulent

---

    [22]  Specifically, with respect to elaboration regarding the
presence of phony leases, Defendants provided facts regarding the
existence of a phony lease with the Phillies (FAA ¶ 38-41) and
with New York Life Insurance Co.  (FAA ¶ 43.)  Defendants also
provided sufficient reasoning why the Sunset Defendants (along
with other third-party defendants) would produce bogus leases for
the Coliseum - namely, to secure the bridge financing and
consummate the fraudulent transaction.  (FAA ¶ 45.)  With respect
to the existence of an agreement between the third-party
defendants or a common design to defraud Defendants, Defendants
have provided numerous examples of acts the third-party
defendants did together that the reason for performing such acts
was to defraud Defendants.

behavior." <u>Seville Indust. Mach.</u>, 742 F.2d at 791.  At the same time, however, the rule must be read in concert with Fed. R. Civ. P. 8(a) (providing for the liberal construction of pleadings) and Fed. R. Civ. P. 11(b)(3) (requiring an attorney to certify that "to the best of the attorney's knowledge, information and belief" formed after reasonable inquiry, that "the allegations and other factual contentions [in a complaint] have evidentiary support....").[23]  <u>See</u> <u>New Jersey Sports Prod., Inc.</u>, 1997 U.S. Dist. LEXIS 23209 at *42 (the court is required to read Rule 8 and Rule 9(b) together); <u>Shulton, Inc.</u>, 1986 WL 15617 at *16. Thus, "focusing exclusively on [Rule 9(b)'s] 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated'" by the Federal Rules of Civil Procedure.  <u>Seville Indust. Mach.</u>, 742 F.2d at 791 <u>quoting</u> <u>Christidis v. First Penn. Mtg. Trust</u>, 717 F.2d 96, 100 (3d Cir. 1984).  The Court finds that, after reading Rules 8(a), 9(b) and 11(b) together and considering the various checks and balances each Rule places on the others, a blanket prohibition on pleading fraud allegations "upon information and belief" is not appropriate.

---

[23]  In so certifying under Rule 11, Defendants and their counsel are subjecting themselves to possible sanctions if such allegations are proved to lack any reasonable basis. Fed. R. Civ. P. 11.

For the reasons stated in this Section III.B, the Court will deny the Sunset Defendants' motion to dismiss Counts 1-3, 8, and 9 of Defendants proposed FAA.

## C.   Defendants' Negligence-based Claims

In its proposed FAA, Defendants bring claims of negligent misrepresentation (Count 4, FAA ¶¶ 119-126) and negligence/ malpractice (Count 5, FAA ¶¶ 127-141) against both the Sunset and Flynn Defendants.  Specifically, Defendants allege that both the Sunset and Flynn Defendants, along with other third-party defendants, (1) relied on numerous misrepresentations of fact made by both the Sunset and Flynn Defendants (involving due diligence, investigation of the validity of leases and "take out" financing, among other things), and (2) provided Defendants with a faulty appraisal and failed to conduct basic due diligence and exercise a duty to use knowledge, skill and ability possessed by such professionals.  (See FAA ¶¶ 119-141.)

### 1.   Arguments Made by Both the Sunset and Flynn Defendants

Both the Sunset and Flynn Defendants move to dismiss Counts 4 and 5 of the FAA (Counts 2 and 3 of the original Third-party Complaint), arguing that Defendants' negligence and negligent inducement claims do not satisfy even the more liberal pleading requirements of Fed. R. Civ. P. 8(a).  According to the Sunset and Flynn Defendants, Rule 8(a) requires that a pleading provide a defendant with fair notice of the basis of a claim against him.

31

See Fed. R. Civ. P. 8(a).  Here, by charging all third-party defendants collectively with acting negligently, Defendants have failed to put any individual defendant on notice of the basis of the negligence claim asserted against him or her.

To illustrate the point that Defendants' sweeping claims fail under Rule 8(a), the Sunset Defendants point to Paragraph 124 of the proposed FAA that alleges negligence on the part of all of the third-party defendants failing to perform due diligence or obtaining estoppel certificates.  Sunset Defendants state that Defendants have failed to identify why all of the third-party defendants would be responsible for conducting due diligence or obtaining estoppel certificates (given the fact that the Sunset Defendants are mortgage brokers and have no legal duty to advise Staley with regard to her business decisions).

### 2.   Additional Arguments Made by the Flynn Defendants

The Flynn Defendants put forth two additional arguments with respect to Defendants' claim of negligent misrepresentation. First, the Flynn Defendants argue that Defendants cannot maintain a claim of fraudulent misrepresentation because they cannot prove that they relied upon the appraisal Flynn Appraisal prepared in connection with the transaction.  According to the Flynn Defendants, a party can prevail on a claim on negligent misrepresentation only if it can demonstrate that (1) defendant negligently made false communications of material fact, (2)

plaintiff justifiably relied upon the misrepresentations, and (3) such reliance resulted in ascertainable loss. See Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107 (D.N.J. 2003).  Such a claim is unsustainable by Defendants, according to the Flynn Defendants, because Staley claims she never signed any of the closing documents and, if she never signed the documents, she could not have relied upon the Flynn appraisal in doing so.  The Flynn Defendants also point out that there are no allegations in the proposed FAA that Staley ever reviewed the appraisal before she gave down payment money to Phillips and that it is entirely possible that Staley transferred money to Phillips prior to the date the appraisal was issued (June 28, 2004) making reliance on the appraisal impossible.

Second, the Flynn Defendants argue that, because the appraisal contained a disclaimer that the valuation was based on the Phillies signing a lease at the Coliseum, Flynn is absolved of liability stemming from a faulty valuation.  The Flynn Defendants cite Zielinski v. Professional Appraisal Assoc., 326 N.J. Super. 219, 225-27 (N.J. App. Div. 1999)(where an appraiser disclaims responsibility for investigating an aspect of the property, the appraiser cannot be held liable for any defects in areas where it has disclaimed responsibility).[24]  Flynn argues

_____

[24]  In Zielinski, an appraiser expressly disclaimed any responsibility for investigating structural or engineering problems. See 326 N.J. Super. at 223.  When a buyer, who had

that <u>Zielinski</u> applies here as Defendants never saw the report and Flynn disclaimed issues relating to the Phillies lease, an extremely important component of the overall valuation.

### 3.   The Court's Analysis

Under Fed. R. Civ. P. 8(a), a plaintiff is required only to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Thus, the complaint need only "provide a statement sufficient to put the opposing party on notice of the claim." <u>See Weston v. Pennsylvania</u>, 251 F.3d 420, 428 (3d Cir. 2001).  In the context of a negligence claim, a bare allegation of negligence is sufficient.  <u>See Sierocinski v. E.I. Du Pont de Nemours & Co.</u>, 103 F.2d 843, 843-44 (3d Cir. 1939)(a general allegation of negligence such as "defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway" is sufficient.)

Defendants' pleadings go well beyond the minimal standard of Rule 8(a).  Rather than simply making a bare allegation of negligence - all that is required under <u>Sierocinski</u> - Defendants have identified specific acts of negligence (e.g., Flynn Appraisals' failure to conduct due diligence, obtain estoppel

---

never seen the appraisal, sued because of substantial structural defects, the court concluded that the appraiser could not be held liable for structural defects when it had disclaimed responsibility for them.  <u>See id</u>. at 225-27.

certifications, and investigate the validity of leases and the
existence of tenants, and the Sunset Defendants' acceptance of
forged and faked documents, among other things) and specific
negligent misrepresentations (e.g., the Sunset Defendants'
statement of the loan-to-value ratio expressed and the existence
of "take-out" financing in a letter of intent, among others.)
Providing such detail more than satisfies the liberal pleading
requirements of Rule 8(a).  Further, Defendants' pleadings are
sufficient to put both the Flynn and Sunset Defendants on notice
of the claims being asserted against them - even though the
pleadings charge more than one of the third-party defendants
collectively with acting negligently.  It is certainly plausible
that both parties acted negligently in performing their duties or
made the same or similar negligent misrepresentations.

    Moreover, the Court is unpersuaded by the two additional
arguments advanced by Flynn Defendants.  The argument that
Defendants did not rely on Flynn's appraisal is of no moment as
Defendants <u>expressly</u> <u>alleged</u> that they relied on the appraisal
when making the decision to provide Phillips with funds to
purchase the Coliseum.  (FAA ¶ 57, 64, and 126.)  It is well-
settled that, in deciding a motion to dismiss, a court must
"accept all well-pleaded allegations in the complaint as true,
...."  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).  For
the purposes of deciding these motions to dismiss, this Court

must conclude that, as alleged, Defendants relied upon the Flynn appraisal in deciding to fund the purchase.  Furthermore, the Flynn Defendants' argument that Defendants could not have relied on the appraisal because the closing documents were forged makes little sense.  Defendants allege that they relied on the appraisal in deciding to provide funds to Phillips (in the amount of $130,000) for the purchase - not in deciding whether to go through with the closing.  (See FAA ¶ 64.)

Finally, the fact that the appraisal contained a disclaimer about the Phillies' lease - and the fact that the Phillies' lease did not exist - does nothing to absolve the Flynn Defendants of liability under a negligence theory.  The appraisal failed to mention the numerous other phony leases allegedly faked or forged by other third-party defendants.  (See FAA ¶ 61-62.)  Even if Defendants had read the appraisal, a warning to Defendants that, in arriving at the valuation Flynn Appraisals made assumptions about one particular lease, simply cannot serve to innoculate the Flynn Defendants from liability for Defendants' reliance on the remainder of the appraisal.  If an appraiser could avoid liability with such a disclaimer, no party could rely on any appraisal that contained even a minor disclaimer.

As such, both Defendants' claims of negligent misrepresentation (Count 4) and negligence/professional malpractice (Count 5) will be allowed to go forward.

36

D.   **Defendants' Claim of Conversion**

In Count 6 of the proposed FAA, Defendants allege that Phillips, Benish, and Forman, acting in concert, converted funds Staley had provided to Phillips for use as part of the down payment of the Coliseum.  (FAA ¶ 144 - 153.)  Specifically, Defendants allege that, following the closing, Defendant Redevelopment was issued a check in the amount of $50,000 out of the loan proceeds.  (Id. ¶ 145.)  Phillips, Benish, and Forman took the check, forged Staley's signature on it, and endorsed it over to FBS, Inc., an entity used to divert closing proceeds to them.  (Id. ¶ 89, 145-46.)  In their motion papers, the Sunset Defendants argue that this claim should be dismissed as Defendants have failed to state a claim upon which relief can be granted because (1) in the original Third-party Complaint, Defendants failed to allege that any of the Sunset Defendants exercised dominion over the converted funds, and (2) that the generalized and unsupported assertions in the proposed FAA that Forman, along with Phillips and Benish, "assisted each other" in converting certain funds, do not cure the deficiencies present in the original Third-party Complaint.

Sustaining a claim of conversion requires a plaintiff to demonstrate, as a preliminary matter, that the defendant exercised dominion over funds that belong to plaintiff.  See Mueller v. Technical Devices Corp., 8 N.J. 201, 207 (1951).

37

However, contrary to arguments made by the Sunset Defendants,
Defendants specifically alleged that Forman (a) working with
others, forged Staley's signature and endorsed a check at closing
to FBS, Inc., and (b) used the entity FBS, Inc. to divert funds
to himself or other third-party defendants.  (See FAA ¶ 89, 145-
146.)  By virtue of participating in the forgery to deposit funds
to an entity used to eventually divert the proceeds to himself
and others, Forman exercised dominion over the funds.  Moreover,
the fact that Defendants' conversion claim implicates multiple
defendants is not an adequate ground for dismissing the claim.
Thus, under the standards of Fed. R. Civ. P. 12(b)(6), the Court
will deny the Sunset Defendants' motion to dismiss Count 6 of
Defendants proposed FAA.

### E.   Defendants' Claim of Breach of the Covenant of Good Faith and Fair Dealing

In Count 7 of the proposed FAA, Defendants allege that the
Sunset Defendants, along with other third-party defendants,
breached the duty of good faith and fair dealing by engaging in
fraud, making false representations upon which Defendants relied,
forging Staley's signature, and converting deposit funds.  (See
FAA ¶ 154-157.)  According to the Sunset Defendants, a plaintiff
must prove bad faith in the performance or enforcement of a
contract to state a prima facie claim of breach of the covenant
of good faith and fair dealing.  See Brunswick Hills Racquet
Club, Inc. v. Route 18 Shopping Center Assoc., 182 N.J. 210, 224

38

(2005)(emphasis added).  Allegations of bad faith in bargaining or negotiations do not fall within the scope of the duty of good faith and fair dealing.  See In re Student Finance Corp. v. Royal Indemnity Co., 2004 WL 609329 at *6 (D. Del., March 23, 2004). The Sunset Defendants argue that, because Defendants' averments involve allegations of fraud in the inducement and execution - and not the performance or enforcement - of a contract, Defendants have failed to state a cognizable claim against the Sunset Defendants.

The Sunset Defendants do not dispute that an implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law and requires that neither party will interfere with the other's reasonable expectations under the contract.  See Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997); Association Group Life, Inc. v. Catholic War Veterans of the United States, 61 N.J. 150, 153 (1972).  The question before this Court is whether the Sunset Defendants are bound by the covenant of good faith and fair dealing in their actions surrounding the letter of intent they sent to Defendants.

The Court is guided by two cases from this District, identified in Defendants' moving papers, that addressed similar issues.  First, in International Minerals and Mining Corp. v. Citicorp North America, Inc., 736 F. Supp. 587, 591 (D.N.J. 1990)

("IMMC") defendant (a bank) sent plaintiff a "letter of proposal" outlining the proposed terms of a loan and certain conditions precedent that had to occur before funding could take place. Neither party argued that the letter proposal constituted a binding contract to provide funding. See id. at 594. Rather, plaintiff argued that the letter proposal triggered defendant's obligation to act in good faith and that defendant had breached this duty. See id. The district court held that, where a proposal letter "consitute[s] more than a unilateral request to fund a loan or to do business with a certain company" a duty to act in good faith arises. Id. at 594-95 (holding that, in this situation, the defendant is "bound to exercise its 'satisfaction' obligations set forth as conditions precedent to lending in a responsible manner.")

More recently, in Dana Transport, Inc. v. Ableco Finance, LLC, our sister court denied a defendant's motion to dismiss plaintiff's breach of the covenant claim alleging that defendant failed to act reasonably in determining whether conditions precedent requiring defendant to fund a loan were met where the parties set out the conditions in a proposal letter. See 2005 U.S. Dist. LEXIS 18086, *7-9 (D.N.J. August 17, 2005). Again, neither party argued that the proposal was a binding contract. Id. After recognizing that an implied covenant of good faith and fair dealing is present in all contracts in New Jersey, the

40

district court held that, prior to discovery, the court is
"unable to say...that there is no set of facts that plaintiff's
could prove entitling it to recover damages that flow directly
from defendant's alleged conduct." Id. at *7-8.  As such,
plaintiff's are entitled to proceed on the merits of a claim for
breach of an implied covenant of good faith and fair dealing.
See id. *8-9.

    This Court will follow its sister courts and deny the Sunset
Defendants' motion to dismiss as to Defendants' breach of
covenant claim (Count 7 of the proposed FAA).  It is clear from
the holdings in IMMC and Dana Transport, Inc. that a letter
proposal - while not a binding contract - subjects the parties to
a duty of good faith and fair dealing.  Here, the Sunset
Defendants provided Defendants with a letter of intent which,
like the letter proposals in IMMC and Dana Transport, Inc.,
outlined the terms of the proposed loan.  Defendants allege that
the Sunset Defendants breached their duty to act in good faith by
misrepresenting facts in the letter of intent and not acting
reasonably in setting up the type of financing outlined in the
letter of intent.  (FAA ¶ 156.)  Thus, like the Court in Dana
Transport, Inc., applying a 12(b)(6) standard, this Court is
unable to say at this stage of the litigation that there is no
set of facts that Defendants could prove entitling it to recover
damages that flow directly from the Sunset Defendants' alleged

41

conduct.  As such, the Sunset Defendants' motion to dismiss Count 7 is denied.

**V.    CONCLUSION**

    For the reasons expressed in Section III <u>supra</u>, the Court will grant both Plaintiff's motion for leave to amend and Defendants' cross-motion to amend and (a) Plaintiff will be permitted to file its proposed FAC, and (b) Defendants will be permitted to file its proposed FAA.  In addition, for the reasons expressed in Section IV <u>supra</u>, the Court will deny, as to all counts in the proposed FAA, both the Sunset Defendants' and the Flynn Defendants' respective motions to dismiss.

    The accompany Order is entered.


**February 24, 2006**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge

42