UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SUNSET FINANCIAL RESOURCES,
INC.

               Plaintiff,

   v.

REDEVELOPMENT GROUP V, LLC, <u>et</u>
<u>al</u>.,

           Defendants.

HON. JEROME B. SIMANDLE

Civil Action
Nos. 05-2914 and 05-2915

**<u>OPINION</u>**

APPEARANCES:

Alison L. Galer, Esq.
NORRIS, MCLAUGHLIN & MARCUS, P.C.
721 Route 202-206
P.O. Box 1018
Somervile, New Jersey 08876-1018
    <u>and</u>
Jaimee Katz Sussner, Esq.
HERRICK, FEINSTEIN LLP
2 Penn Plaza
11th Floor
Newark, New Jersey 07105
    Attorneys for Plaintiff

Thomas A. Cunniff, Esq.
Samuel H. Israel, Esq.
James Griffith, Esq.
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
    Attorneys for Defendants Redevelopment Group V, LLC and Dawn
    Staley

Gregory C. DiCarlo, Esq.
Cipriani & Werner, P.C.
10000 Lincoln Drive East
Suite 201
Marlton, New Jersey 08053-3015
    Attorney for Defendants Flynn Appraisal Associates, Inc. and
    Brian Flynn

**SIMANDLE,** District Judge:

This matter is before the Court on two motions to dismiss filed by Defendants Flynn Appraisal Associates, Inc. ("Flynn Appraisal") and Brian Flynn ("Flynn").[1]  Specifically, the Flynn Defendants move to dismiss certain counts and to strike Brian Flynn as a defendant in certain counts in the First Amended Complaint ("FAC") filed by Plaintiff Sunset Financial Resources, Inc. ("Plaintiff").  Second, both Flynn Appraisal and Flynn move to dismiss certain counts of Defendants Dawn Staley and Redevelopment Group V, LLC's First Amended Answer and Cross-Claims (the "FAA").  The claims against Flynn Appraisal and Flynn stem from an allegedly faulty appraisal, issued by Flynn Appraisal, on an athletic facility in Voorhees, New Jersey.  For the reasons expressed below, both of Flynn Appraisal and Flynn's motions to dismiss will be denied.

I.   **BACKGROUND**

   A.   **The Allegedly Fraudulent Transaction**

Because the parties to this case are familiar with its underlying facts, the Court will include only a brief summary of the relevant facts.  This case centers on an athletic facility known as "The Coliseum" in Voorhees, New Jersey, a 22-acre commercial sports facility, containing an ice rink, gym, indoor

---

[1]  Flynn Appraisal and Brian Flynn will be known collectively as the "Flynn Defendants."

2

and outdoor swimming pool, fitness center, banquet facility and
office space.  (FAC ¶ 7.)  Plaintiff originally brought this
claim against two defendants (Redevelopment Group V, LLC and Dawn
Staley)(the "Redevelopment Defendants") seeking to foreclose on a
mortgage for the Coliseum and enforce a mortgage note.[2]  The
Redevelopment Defendants argue that they are not responsible for
the debt because Plaintiff, an individual named Jay Phillips
("Phillips") and several others put into motion a scheme to
defraud and wrongfully induce the Redevelopment Defendants to
execute certain loan documents necessary for Phillips to acquire
the Coliseum.  (FAA ¶ 25-26.)

In order to induce the Redevelopment Defendants to purchase
the mortgaged property, the Redevelopment Defendants claim that
Plaintiff and other third-party defendants (Phillips, Steven
Forman, Sunset Mortgage Company, L.P., and Sunset Commercial)
grossly misrepresented the value of the Coliseum, allegedly
telling Staley that the Coliseum was worth at least $9,000,000
and that Staley's investment would be secure because she would
only be taking out a $4,700,000 mortgage on a property.  (Id. ¶
57.)  Phillips also allegedly told Staley that the monthly income
stream from the property's current lessees was greater than the
monthly mortgage payments.  (Id.)  After Staley had signed the

---

[2]     Plaintiff filed companion lawsuits.  One suit is a
foreclosure action (Docket No. 05-2914) and the other is an
action to enforce a mortgage note (Docket No. 05-2915).

contract of sale, the Redevelopment Defendants claim that, on August 4, 2004, a closing occurred in Staley's absence.  The Redevelopment Defendants claim that Staley's signature was forged on the pertinent loan and closing documents.

**B.    The Role of Flynn Appraisal Associates, Inc. and Brian Flynn**

Brian Flynn is a licensed real estate appraiser working through his appraisal company Flynn Appraisal Associates, Inc. In connection with the transaction, Phillips and others allegedly induced Plaintiff to engage Flynn Appraisal to perform an appraisal of the Coliseum. (Id. ¶ 54-55.)  According to the Redevelopment Defendants, Flynn Appraisal valued the Coliseum at over $9,000,000 but failed to conduct such basic due diligence such as investigating the validity of allegedly faked and forged leases or obtaining estoppel certificates for the current tenants of the Coliseum. (Id. ¶ 56, 59-60.)  Plaintiff then engaged Boney & Johnson Appraisers ("Boney & Johnson") to provide an independent validation of Flynn Appraisal's appraisal. (Id. ¶ 63.)  Boney & Johnson expressed concerns about the validity of the earlier appraisal but, according to the Redevelopment Defendants, Phillips and others induced Boney & Johnson to sign off on the earlier appraisal by making several alleged misrepresentations to them. (Id.)

C.   <u>This Court's February 24, 2006 Opinion and Order</u>

Plaintiff filed companion actions in this case on April 8, 2005 in the Superior Court of New Jersey: (1) a foreclosure action against Redevelopment and (2) an action against both Redevelopment and Staley demanding payment of the overdue principle, interest, and late fees under the note.  On June 6, 2005, both state court actions were removed to this Court.  On July 17, 2005, the Redevelopment Defendants filed an Answer in the note action making a number of counterclaims and third-party claims against various third-party defendants.  Third-party defendants Sunset Mortgage/Sunset Commercial and Flynn Appraisal filed motions to dismiss the Redevelopment Defendants' third-party complaint.  Plaintiff then filed a motion to amend/correct its Complaint in order to add new parties and new claims (contained in Plaintiff's proposed First Amended Complaint ("FAC")) and the Redevelopment Defendants filed a cross-motion to amend its answer, cross-claims and counterclaims (contained in Defendants' First Amended Answer, Cross-claims, and Counterclaims ("FAA")).

In a February 24, 2006 Opinion and Order, this Court, <u>inter alia</u>, (1) granted Plaintiff's motion to amend and file its FAC and name the Flynn Defendants as direct defendants and (2) granted the Redevelopment Defendants' motion to amend its FAA to bring additional claims against the Flynn Defendants.  <u>Sunset</u>

<u>Financial Resources, Inc. v. Redevelopment Group V, LLC</u>, 417 F. Supp.2d 632 D.N.J. 2006)("<u>Sunset I</u>").  The Court also denied the Flynn Defendants' motion to dismiss the original cross-claims brought by the Redevelopment Defendants.[3]  (<u>Id.</u>)

   **D.   New Claims in the FAC and FAA**

   At issue in this motion are five new claims asserted by Plaintiff against the Flynn Defendants in the FAC.  They are as follows:

- Count 22: Plaintiff alleges that Flynn and Flynn Appraisal breached its contract with Plaintiff "to provide [P]laintiff with an accurate appraisal of the fair market value of the [Coliseum] . . . by providing an inaccurate, erroneous and inflated appraisal of the fair market value of the [Coliseum]."  (FAC, Count 22 at ¶¶ 2, 3.);

- Count 23: Plaintiff alleges that Flynn and Flynn Appraisal was negligent and engaged in professional malpractice when they failed to provide an accurate appraisal and to confirm the authenticity of certain leases related to the Coliseum; (<u>Id.</u> at Count 23.)

- Count 24: Plaintiff alleges that Flynn breached his fiduciary duty to Plaintiff "by failing to properly and accurately appraise the fair market value of the Mortgaged Property."  (<u>Id.</u> at Count 24, ¶ 3.);

- Count 25: Plaintiff alleges that Flynn and Flynn Appraisal negligently misrepresented the value of the Coliseum and the authenticity and value of certain leases. (<u>Id.</u> at Count 25, ¶ 5.); and

- Count 26: Plaintiff asserts a claim of "Tortious Interference with Economic Advantage," alleging that

---

   [3]  At oral argument, however, the Court confirmed that the Flynn Defendants had the right to file motions to dismiss any new claims brought against them in either the FAC or the FAA.

Flynn and Flynn Appraisal "were negligent in making . . . false statements of fact or opinion" about the value of the Coliseum and the authenticity of certain leases. (Id. at Count 26, ¶ 3.)

Also at issue in this motion are two new claims against the Flynn Defendants raised in the Redevelopment Defendants' amended FAA.  First, the FAA names Flynn individually in a negligent misrepresentation count.  (FAA, Count 4.)  Second, the FAA names Flynn individually in a negligence/malpractice claim.  (FAA, Count 5.)

**E.   Procedural History**

On April 11, 2006, the Flynn Defendants filed motions to dismiss (1) Counts 22 through 26 of Plaintiff's FAC [Docket Item No. 113] and (2) Counts 4 and 5 of the Redevelopment Defendants' FAA [Docket Item No. 114].  On April 21, 2006, Plaintiff and the Redevelopment Defendants filed opposition to the motions. [Docket Item Nos. 125, 126, respectively.]  The Flynn Defendants did not reply and the Court did not hear oral argument on these motions. See Fed. R. Civ. P. 78.

**II.  DISCUSSION**

**A.   Standard of Review**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court

must accept any and all reasonable inferences derived from those facts.  See Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394-95 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  Finally, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

**B.   The Flynn Defendants' Motion to Dismiss Counts 22 - 26 of Plaintiff's FAC**

The Flynn Defendants seek two forms of relief in their motion to dismiss.  First, the Flynn Defendants seek to dismiss all claims in the FAC against Brian Flynn, in his personal capacity.  Second, the Flynn Defendants seek to dismiss Plaintiff's claims of breach of contract (Count 22), breach of fiduciary duty (Count 24) and tortious interference with economic advantage (Count 26) against Flynn, Flynn Appraisal or both Flynn Defendants.

8

### 1.   Plaintiff's Claims Against Brian Flynn in his Personal Capacity (FAC Counts 22-26)

The Flynn Defendants first argue that all claims in the FAC against Brian Flynn in his personal capacity must be dismissed under Rule 12(b)(6), Fed. R. Civ. P. because Plaintiff has failed to plead facts necessary to hold Flynn liable.  According to the Flynn Defendants, at all relevant times, Brian Flynn acted on behalf of Flynn Appraisal.  (Flynn's Br. to Dismiss the FAC at 6.)  The Flynn Defendants argue that, in order for Plaintiff to hold Brian Flynn personally liable for any conduct he engaged in while acting on behalf of his employer Flynn Appraisal, Plaintiff must state a claim for "piercing the corporate veil" and/or under the "participation theory."  (<u>Id.</u> at 6-7.)  Because Plaintiff has failed to plead facts necessary to state such a claim, according to the Flynn Defendants, Plaintiff's claim against Flynn in his individual capacity must be dismissed.  (<u>Id.</u> at 7.)

### a.   Piercing the Corporate Veil

The Flynn Defendants point out that a corporation is separate from its shareholders, and that "a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprises."  (<u>Id.</u> at 6 citing <u>Catsouphes v. ATEX Assoc., Inc.</u>, 287 N.J. Super. 459 (App. Div. 1996).)  In order to state a cognizable claim for piercing the corporate veil, a plaintiff must show that: (1) the corporation is organized and operated as a mere instrumentality of a

shareholder, (2) the shareholder uses the corporation to commit
fraud, injustice or circumvent the law, and (3) the shareholder
fails to maintain the corporate identity.  (Id. citing Bd. of Tr.
of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d
164, 171-72 (3d Cir. 2002.))  The Flynn Defendants argue that
Plaintiff has failed to plead any of the requisite elements to
pierce the corporate veil in its FAC.  Instead, the Flynn
Defendants argue that, on all occasions giving rise to the
litigation, Flynn was working on behalf of Flynn Appraisal and as
such, no claims against Brian Flynn personally can proceed.

This Court disagrees with the Flynn Defendants'
interpretation of the requirements for piercing the corporate
veil.  Of central importance here is that Plaintiff's claims
against Brian Flynn (and Flynn's liability) arise from Flynn's
own conduct related to providing the appraisal, and not from
Flynn's position as a principal or owner of Flynn Appraisal.  As
such, Brian Flynn may not use the fact that his allegedly
tortious conduct was performed on behalf of a corporate entity to
shield himself from liability for his own acts.  New Jersey law
is clear that an individual who personally participates in a tort
may be held individually liable for that tortious conduct even if
that individual does so on behalf of his employer.  Ballinger v.
Delaware River Port Auth., 172 N.J. 586, 608 (2002); Borecki v.
Easter Int'l Mgmt Corp., 694 F. Supp. 47, 59 (D.N.J. 1988)(an

agent is liable for his tortious acts, even if his principal is
also liable); <u>Moss v. Jones</u>, 93 N.J. Super. 179 (App. Div. 1966).
 According to the New Jersey Supreme Court, such a conclusion
"comports with the long-standing rule that '[a]n agent who does
an act otherwise a tort is <u>not</u> relieved from liability but for
the fact that he acted at the command of the principal or on
account of the principal." <u>Ballinger</u>, 172 N.J. at 608 (citing
<u>Restatement (Second) of Agency</u> § 343 (1958)(emphasis added)).

In <u>Donsco, Inc. v. Casper Corp.</u>, 587 F.2d 602, 606 (3d Cir.
1978), the Third Circuit Court of Appeals addressed the exact
argument advanced by the Flynn Defendants.  In <u>Donsco</u>, the
plaintiff brought an unfair competition action against Casper
Corporation and its officer Casper Pinsker, individually.  <u>Id.</u>
The Third Circuit held that:

> A corporate officer is individually liable for the
> torts he personally commits and cannot shield himself
> behind a corporation when he is an actual participant
> in the tort.  The fact that an officer is acting for a
> corporation also may make the corporation vicariously
> or secondarily liable under the doctrine of respondeat
> superior; it does not however relieve the individual of
> his responsibility.

<u>Id.</u> (internal citations omitted); <u>see also United States ex rel.</u>
<u>Haskins v. Omega Inst.</u>, 11 F. Supp. 2d 555, 565 (D.N.J. 1998).
The Court held that because Pinsker authorized and approved the
acts of unfair competition that were the basis of Casper
Corporation's liability, Pinsker engaged in "sufficient actual
participation in the wrongful acts to make [him] individually

11

liable." Id.   The fact that these acts were done by Pinsker as
agent of the corporation "does not affect Pinker's liability."
Id.  Rather, Pinsker was "liable as a participant in the wrongful
act . . . [and such] liability is distinct from the liability
resulting from the 'piercing of the corporate veil' as that term
is commonly used" because "Pinsker is liable here as an actor
rather than as an owner."   Id.

In this case, Plaintiff's FAC brings causes of action
against both Flynn Appraisal and Brian Flynn in his personal
capacity.  The allegations against Brian Flynn are not based on
his position as a principal or officer of Flynn Appraisal, but
based on his own personal conduct.  This is clear in the FAC
where Plaintiff alleges, for example, that Brian Flynn himself
breached the contract with Plaintiff (Count 22, ¶ 3) and was
negligent in performing the appraisal.  (Count 23, ¶ 3).
Allegations such as "Flynn Appraisal, by and through Brian Flynn,
prepared and issued an appraisal predicated upon false,
fraudulent and inflated assessments of value" provide support for
Plaintiff's allegations of the vicarious liability of Flynn
Appraisal; they do not permit Brian Flynn to avoid personal
liability by hiding behind Flynn Appraisal.  Thus, Plaintiff need
not plead a cause of action for piercing the corporate veil to
hold Brian Flynn individually liable in tort.  Plaintiff would
only need to plead facts related to veil piercing if, for

example, Plaintiff sought to hold Brian Flynn personally liable as owner or officer of Flynn Appraisal for actions of another appraiser's work on behalf of Flynn Appraisal or an action deemed taken by the corporation.

### b.   Participation Theory

The Flynn Defendants also argue that, under the participation theory, a corporate officer can be held personally liable for a tort committed by the corporation only when he or she is sufficiently involved in the commission of the tort. (Flynn Def.'s Br. at 7 citing  Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 303 (N.J. 2002)).  Moreover, according to the Flynn Defendants, a plaintiff cannot plead a cause of action sounding in tort without demonstrating that Defendant owed a duty to the plaintiff outside the scope of any contractual relationship between the parties.  (Id. at 8.)  Without such a duty, the Flynn Defendants argue that the aggrieved party's claim sounds in contract.  (Id.)  Here, according to the Flynn Defendants, Plaintiff's claims sound in contract, not in tort as the Flynn Defendants had no independent duty arising from the scope of the contract.  (Id.)

"[T]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort."  Saltiel, 170 N.J. at

303.   "A predicate to liability is a finding that the corporation
owed a duty of care to the victim, the duty was delegated to the
officer and the officer breached the duty of care by his own
conduct."  Id.   In Saltiel, the New Jersey Supreme Court
addressed the issue of whether corporate officers can be held
personally liable for allegedly tortious conduct under the
participation theory of liability.  Id. at 297.  The defendants
in Saltiel were two corporate entities and two individuals
contracted to design turfgrass for two athletic fields.  Id. at
300.  The court specifically addressed whether the two officers
of the turfgrass corporation could be held personally liable to a
plaintiff when the corporation negligently designed turfgrass
specifications for the two athletic fields.  Id. at 300-01.

    The court held that, under limited circumstances the
participation theory was applicable to hold corporate officers
personally liable for tortious conduct, but because the court was
"convinced that [the plaintiff in this case] ha[d] not pled and
supported a cause of action sounding in tort, and ha[d] failed to
establish that either [individual defendants] owed a duty to
plaintiff outside the scope of the contract, the theory cannot be
applied to the facts in this record."  Id. at 315.  Instead, the
court held that the "case is essentially a basic breach of
contract case" and "[t]here appears to have been no expectation
that the individual defendants would be personally liable under

14

the contract." Id. at 316.  Moreover, the court stated that "[u]nder New Jersey law, a tort remedy does not rise from a contractual relationship unless the breaching party owes an independent duty imposed by law" and that in this transaction the court was unable to discern any duty owed to plaintiff "independent of the duties that arose under the contract." Id. The court contrasted the situation to that of a physician, attorney or insurance broker whose duties can be enforced separately and apart from contractual duties.  Id.

Here, Plaintiff need not rely on the participation theory to hold Brian Flynn liable because Plaintiff's claims are made against Brian Flynn directly due to his own tortious conduct.  It is clear that Plaintiff may bring a claim against Brian Flynn sounding in tort rather than contract.  A tort remedy arises here because, unlike the defendant in Saltiel, Brian Flynn was an appraiser who owed a duty to Plaintiff imposed by law and independent from any contractual duty.  See Vision Mortgage Corp., Inc. v. Chiapperini, 156 N.J. 580, 586 (1999)(real estate appraiser can be sued for professional malpractice).  Moreover, Plaintiff's tort claims are made directly against Brian Flynn based on his actions -- not against a corporate defendant with the intent that Brian Flynn will be held liable through the participation theory of liability.  Plaintiff need not use the participation theory to hold Brian Flynn personally liable.  As

such, this Court will deny the Flynn Defendants' motion to
dismiss Plaintiff's causes of action in Counts 22 through 26 of
the FAC against Brian Flynn in his personal capacity.

> **2.    Plaintiff's Additional Claims Against the Flynn
> Defendants (Counts 22, 24, and 26 of the FAC)**

> **a.    Plaintiff's Breach of Contract Claim**

The Flynn Defendants argue that Count 22 of the FAC fails to
state a claim for breach of contract because Plaintiff has failed
to assert how the Flynn Defendants' alleged nonperformance
actually caused Plaintiff's injuries.  According to the Flynn
Defendants, their loss stems from the Redevelopment Defendants'
default in payment of the loan, not from an inaccurate appraisal
report.  Therefore, Plaintiff's claim for breach of contract
should be dismissed.

This Court disagrees.  The FAC contains numerous allegations
that outline Plaintiff's theory of the Flynn Defendants'
liability.  First, Plaintiff alleges that the Redevelopment
Defendants state that they are not liable for the loan because
certain loan documents were forged under a fraudulent scheme
carried out, in part, by Flynn Appraisal.  (FAC ¶ 20.)  Plaintiff
also alleges that the Flynn Defendants "prepared and issued an
appraisal predicated upon false, fraudulent and inflated
assessments of value", (id. ¶ 35), and that the Flynn Defendants
"breached their contract with Plaintiff by providing an
inaccurate, erroneous and inflated appraisal of the fair market

16

value of the [Coliseum and] [a]s a proximate result of such
breach by [Flynn Appraisal], Plaintiff has been damaged." (FAC,
Count 22 ¶ 2-3.)   These allegations are sufficient to put the
Flynn Defendants on notice that, should Plaintiff be unable to
recover under the loan due to a fraudulent scheme in which the
Flynn Defendants participated, the Flynn Defendants would have
caused Plaintiff's damages.

### b.  Plaintiff's Claim of Breach of Fiduciary Duty

The Flynn Defendants' objection to Plaintiff's claim of a
breach of fiduciary duty on the part of Flynn -- specifically
that Plaintiff failed to allege a relationship upon which the law
imposes a fiduciary relationship -- is equally dubious.  Under
New Jersey law, a fiduciary relationship exists when "one party
places trust and confidence in another who is in a dominant or
superior position," F.G. v. MacDonell, 150 N.J. 550, 563 (1997),
and where one party "is under a duty to act or give advice for
the benefit of another on matters within the scope of their
relationship."  Id. at 563.  The parties have not cited and this
Court's research has not found any case recognizing a fiduciary
relationship between a mortgage company and an appraiser under
New Jersey law.  However, New Jersey law makes clear (and the
Flynn Defendants admit in their brief) that determining whether a
fiduciary relationship exists between two parties is a fact
sensitive inquiry.  Id. at 563-64 (citing Bogert, Trusts and

Trustees 2d § 481 (1978) (in which the New Jersey Supreme court states "[t]he exact limits of the term 'fiduciary relation' are impossible of statement [and that the finding of such a relationship depends] upon the circumstances of the particular case or transaction, certain business, public or social relationships may or may not create or involve a fiduciary character.")  It would appear that Plaintiff can, with discovery, prove some set of facts in support of its claim that a fiduciary relationship exists, was breached and, therefore, that they are entitled to relief.  As such, at this stage in the proceedings, the Flynn Defendants' motion to dismiss Count 24 will be denied.[4]

c.  **Plaintiff's Claim of Tortious Interference with a Prospective Economic Advantage (FAC ¶ 26.)**

Finally, the Flynn Defendants argue that this Court should dismiss Count 26, which is titled "tortious interference with prospective economic advantage."  (FAC ¶ 26.)  Specifically, the Flynn Defendants argue that Plaintiff has failed to state a claim for tortious interference because it failed to plead (1) that actions of the Flynn Defendants caused Plaintiff's alleged harm or (2) that either of the Flynn Defendants acted with malice —-

_____

[4]  At the completion of discovery, however, the Flynn Defendants can of course bring a motion for summary judgment with respect to this claim arguing that there is no genuine issue of material fact in dispute and that Plaintiff is not entitled to recover for breach of fiduciary duty.

both of which are essential elements of a tortious interference claim.[5]

Plaintiff counters, arguing that Count 26 was inadvertently incorrectly titled "tortious interference with prospective economic advantage."  Instead, Plaintiff claims, Count 26 states a claim for negligent interference of prospective economic advantage.  Such a claim, according to Plaintiff, is recognized by New Jersey courts.  See People Exp. Airlines, Inc. v Consolidated Rail Corp., 100 N.J. 246, 263 (1983).[6]  According to Plaintiff, the FAC states such a claim and "regardless of the improper heading of [Count 26], this count should not be dismissed as [P]laintiff has set forth a cause of action against defendants for negligently causing economic loss to [P]laintiff." (Pl.'s Opp. Br. at 16-17.)

---

[5] In order to establish a prima facie case of tortious interference with prospective economic advantage, a plaintiff must show (a) a reasonable expectation of economic advantage, (2) interference done intentionally and with malice, (3) causal connection between the interference and the loss or prospective gain, and (4) actual damages.  Varallo v. Hammond, Inc., 94 F.3d 842, 848 (3d Cir. 1996).

[6] According to Plaintiff, to bring a claim of negligent interference with prospective economic advantage a plaintiff must show that (1) the defendant knows or has reason to know that a class of people is likely to suffer irreparable harm as a result of the defendant's conduct; (2) the conduct is liable to cause economic damages; and (3) defendant has breached its duty to take reasonable measures to avoid the risk of causing economic damages.  Id.

A close inspection of Count 26 of the FAC reveals that the Flynn Defendants' conclusion that Plaintiff was bringing a claim of tortious interference rather than negligent interference was not simply based on Count 26 being inadvertently mistitled as a tortious interference claim.  Indeed, paragraph 2 of Count 26 claims that the Flynn Defendants "engaged in conduct that tortiously interfered with Plaintiff's prospective economic advantage."  (FAC Count 26 ¶ 2.)

In the next paragraph, however, Plaintiff avers that the Flynn Defendants "made false statements of fact or opinion and were negligent in making such false statements of fact or opinion . . . ."  (Id. ¶ 3.)  Thus, viewing the allegations in the FAC in the light most favorable to Plaintiff (as this Court must at this stage in the proceedings), while Count 26 of the FAC is less than artfully drafted, it satisfies the minimum requirements of a pleading under Rule 8, Fed. R. Civ. P. as it contains a "short and plain statement[] of 'the grounds upon which the court's jurisdiction depends' and 'the claim showing that the pleader is entitled to relief.'" Blount v. Hunterdon Dev. Ctr., No. 06-5471, 2006 U.S. Dist. LEXIS 88695 (D.N.J. Dec. 6, 2006)(quoting Fed. R. Civ. P. 8(a)).  Plaintiff's reference to the Flynn Defendants' negligence in providing the appraisal and how such conduct harmed Plaintiff is sufficient to give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley

v. Gibson, 355 U.S. 41, 47 (1957).  Thus, the Flynn Defendants'
motion to dismiss Count 26 of the FAC will be denied.[7]

    **C.**    **The Flynn Defendants' Motion to Dismiss the**
           **Redevelopment Defendants' Claims in the FAA**

In their motion directed at the First Amended Answer and
cross-claims filed by the Redevelopment Defendants, the Flynn
Defendants seek to dismiss the Redevelopment Defendants' claims
of negligent misrepresentation and negligence/malpractice (Counts
4 and 5 of the FAA).  The Flynn Defendants seek dismissal on the
same grounds as they sought to strike Brian Flynn as a defendant
in their motion to dismiss certain counts of the FAC, i.e., that
the Redevelopment Defendants have failed to allege facts
necessary to state a claim for piercing the corporate veil or
under the participation theory.

For the same reasons discussed in Section II.B.1(a) and (b)
supra, the Flynn Defendants' motion to dismiss the Redevelopment
Defendants third-party complaint must be denied.  In short,
because the Redevelopment Defendants claim that Brian Flynn is
liable for various tortious conduct due to his own conduct
related to providing the appraisal -- rather than solely as a

---

     [7]  However, because Plaintiff admits that Count 26 of the
FAC was inartfully drafted, the Court will grant Plaintiff leave
to amend the FAC to correct these errors by filing an amended FAC
within five (5) days of the entry of this Order.  Because the
Flynn Defendants have yet to answer the FAC, the Flynn Defendants
do not need an opportunity to amend any answer to the FAC.

principal or owner of Flynn Appraisal -- the Redevelopment Defendants need not plead facts related to the doctrine of piercing the corporate veil or the participation theory in order to hold Brian Flynn liable in his individual capacity.  As discussed <u>supra</u>, the Flynn Defendants' argument misuses the doctrine of piercing the corporate veil and the participation theory in an attempt to shield Brian Flynn from liability for his own acts.  Under New Jersey law, an individual who personally participates in a tort may be held individually liable, <u>Ballinger</u>, 172 N.J. at 608, and "cannot shield himself behind a corporation when he is an actual participant in the tort." <u>Donsco, Inc.</u>, 587 F.2d at 606.

In this case, the FAA brings causes of action against both Flynn Appraisal and Brian Flynn individually.  The allegations against Brian Flynn are not based on his position as a principal or officer of Flynn Appraisal, but on his personal conduct. Moreover, the Redevelopment Defendants point out that in Flynn Appraisal's answers to interrogatories, the Flynn Defendants admit that Brian Flynn was the only member of Flynn Appraisal to work on the appraisal.  (Flynn Appraisal Interrogatory Answers, No. 9.)   As such, because the Redevelopment Defendants need not plead a cause of action for piercing the corporate veil or under the participation theory to hold Brian Flynn individually liable, the Flynn Defendants' motion to dismiss will be denied.

22

**III. CONCLUSION**

      For the reasons expressed above, the Flynn Defendants' (1) motion to dismiss Counts 22-26 of Plaintiff's FAC and (2) motion to dismiss Counts 4 and 5 of the Redevelopment Defendants' FAA will be denied.  The accompanying Order will be entered.


**December 12, 2006**           **s/ Jerome B. Simandle**
DATE                           JEROME B. SIMANDLE
                                 United States District Judge